**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FT. LAUDERDALE DIVISION**

| | | |
|---|---|---|
| ASTORRIA SASSANO, | ) | |
| | ) | CASE NO.: _____ |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| PETSMART, INC., a Foreign For-Profit | ) | **NOTICE OF REMOVAL** |
| Corporation | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446, Defendant PetSmart, Inc.

("PetSmart") hereby gives notice of removal of the above-entitled action, and all claims and causes

of action therein, currently pending in the Circuit Court of the Seventeenth Judicial Circuit in and

for Broward County, Florida (the "State Court Action"). Defendant PetSmart appears for the

purposes of removal only, reserves all defenses and rights available to it, and as grounds for

removal states as follows:

**NOTICE OF REMOVAL**

1.      Plaintiff filed the above-entitled action on April 22, 2020 against PetSmart in the

Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida. Plaintiff

served PetSmart's registered agent with a copy of the Complaint via process server on May 1,

2020. A copy of the receipt of service of process from PetSmart's registered agent is attached

hereto as Exhibit A.

2.      Service of Process on May 1, 2020 constituted PetSmart's first receipt of a copy

of the initial pleading setting forth the claim for relief upon which such action or proceeding is

based. This Notice of Removal is being filed within 30 days of the same, and is therefore timely

under 28 U.S.C. § 1446(b)(1).

3.      Pursuant to 28 U.S.C. § 1446(d), PetSmart will file a copy of this Notice of Removal with the Clerk of the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, and will serve a copy of this Notice of Removal on Plaintiff to properly effect removal of this action to this Court.

4.      A true and correct copy of the Complaint is attached hereto as Exhibit B. Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of all other process, pleadings, and orders served upon PetSmart in the State Court Action is attached hereto as Exhibit C. A copy of the docket in the State Court Action is attached as Exhibit D. No substantive motions have been filed in the State Court Action.

5.      In submitting this Notice of Removal, PetSmart reserves all rights and defenses, including as to venue, personal jurisdiction, the legal sufficiency of the claims alleged in Plaintiff's complaint, and all other objections and defenses.

## FEDERAL QUESTION JURISDICTION OF THIS COURT

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 1441(a) because this action necessarily raises substantial and disputed federal issues. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005). Suits alleging only state-law causes of action nevertheless "arise under" federal law if the "state-law claim[s] necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314. Applying this test "calls for a 'common-sense accommodation of judgment to the kaleidoscopic situations' that present a federal issue." *Id.* at 313.

7.      The Eleventh Circuit has explained that "'[t]he substantiality inquiry under *Grable*

looks to the importance of the issue to the federal system as a whole,' and the Supreme Court has

identified three factors to assist in this inquiry. First, a pure question of law is more likely to be a

substantial federal question. Second, a question that will control many other cases is more likely

to be a substantial federal question. Third, a question that the government has a strong interest in

litigating in a federal forum is more likely to be a substantial federal question." *MDS (Can.), Inc.*

*v. RAD Source Techs., Inc.*, 720 F.3d 833, 842 (11th Cir. 2013).

8.      This District has likewise followed the test set out by the Supreme Court in *Grable*,

and also underscored that "[i]n making this determination, 'the removing court looks to the

substance of the complaint, not the labels used in it.'" *Edwards v. Deloitte & Touche, LLP*, No.

16-21221-Civ-Scola, 2017 U.S. Dist. LEXIS 221984, at *10 (S.D. Fla. Jan. 18, 2017) (finding

federal question jurisdiction over exclusively state law causes of action). This District has also

made clear that, "even if it appears from the complaint that only state-law causes of action are

actually pleaded, a federal question will be inferred where 'the vindication of a right under state

law necessarily turns on some construction of federal law.'" *MSPA Claims 1, LLC v. Allstate Prop.*

*& Cas. Ins. Co.*, No. 16-20443-Civ-Scola, 2016 U.S. Dist. LEXIS 92958, at *5-6 (S.D. Fla. June

29, 2016); *see also Korman v. IRS*, No. 06-81294-Civ-Marra, 2007 U.S. Dist. LEXIS 91046, at

*10 (S.D. Fla. Feb. 20, 2007) ("That Plaintiff chose to cast his challenge to the propriety of the

federal tax lien in state law terms is of no consequence. Under the artful pleading doctrine, federal

courts may take jurisdiction over a complaint removed from state court where the plaintiff,

although framing his action under state law, in actuality raises an essential federal question.'")

(denying motion to remand state law claim).

9.      Federal jurisdiction is also proper under the *Grable* framework "where federal law completely preempts the state law claims" or "where the plaintiff has attempted to defeat removal by 'artful pleading,' *i.e.* by failing to plead a necessary federal question in his complaint." *Quepasa Corp. v. Valdez*, No. 10-80698-Civ-Hurley, 2010 U.S. Dist. LEXIS 153817, at *13 (S.D. Fla. Nov. 19, 2010) (citations omitted). Under the "artful pleading" doctrine specifically, "[r]emoval will be held proper when the plaintiff has concealed a legitimate ground of removal by inadvertence, or artful pleading. The plaintiff may be said to have engaged in 'artful pleading' in particular when he pleads a state cause of action the merits of which turn on an important federal question." *Ayres v. GMC*, 234 F.3d 514, 518 n.7 (11th Cir. 2000) (quoting 14B Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 3732, at 333 (3d ed. 1998) (emphasis added); *see also* 15A Moore's Federal Practice - Civil § 103.43; ("A plaintiff cannot avoid federal court simply by omitting a necessary federal question in the complaint; in such a case the necessary federal question will be deemed to be alleged in the complaint. This is a corollary to the well-pleaded complaint rule, sometimes called the 'artful pleading' exception, that a plaintiff may not frame the action solely under state law by omitting federal questions that are essential to recovery."); 15A Moore's Federal Practice - Civil § 107.73.

**The Legal Issue in This Case Depends Exclusively On Federal Law Interpretation.**

10.     In this case, although Plaintiff pleads only a single state law cause of action, for violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq.*, her allegations derive *exclusively* from the claim that the Only Natural Pet Hemp Seed Oil with Krill and Cod Liver product sold by PetSmart (hereinafter, the "Product") violates the Federal Food Drug & Cosmetics Act ("FD&C Act") because it is an unapproved "new animal drug" under that law and is therefore "unsafe" and "adulterated." *See* Ex. B ¶¶ 15-23. Specifically,

Plaintiff alleges that the product "is not approved by the FDA or indexed and therefore the Product is considered unsafe under section 512(a) of the FD&C Act, 21 U.S.C. 360b(a), and adulterated under section 501(a)(5) of the FD&C Act, 21 U.S.C. 351(a)(5)," and as such, "the Product is an unapproved new animal drug and cannot lawfully be sold." (Compl., Ex. B ¶¶ 19, 21).

11.     Plaintiff makes no other claims whatsoever regarding the efficacy of the Product or the truthfulness of the Product's advertised claims – her grievance is exclusively a matter of regulatory compliance under federal law. Plaintiff makes no claims, for example, regarding any alleged problems or deficiencies with the Product. Instead, the Complaint merely alleges that these alleged regulatory violations make the product "worthless" as a matter of law because it cannot lawfully be sold. *Id.* ¶¶ 21-23.[1] Accordingly, this Court has subject matter jurisdiction under *Grable* and the applications of Grable's principles in this Circuit and District, because the Complaint "necessarily raise a stated federal issue" that is "actually disputed and substantial."

12.     A federal forum may entertain the issues presented in this case without disturbing any congressionally approved balance of federal and state judicial responsibilities because it impacts only the interpretation of federal FDA law, with the state FDUTPA statute serving as nothing more than a vehicle for a challenge premised solely on alleged violations of federal law. Indeed, there is greater federal interest in this case, because its outcome depends entirely on the interpretation of federal law.

13.     The federal government has a strong interest in questions regarding the interpretation and application of the FD&C Act being litigated in a federal forum, so that these

---

[1] For the avoidance of doubt, even if such additional claims were made, this would not impact the Court's jurisdiction because the federal law claims would still be essential to Plaintiff's Complaint.

important questions of FDA law—to which the government devotes extensive regulatory resources—can be uniformly understood.[2]

14.      Moreover, the resolution of the issues presented in Plaintiff's Complaint are a pure question of law as to how federal law regulates and applies to pet products containing hemp ingredients, and whether such products actually violate FDA laws, while the content of this Product's ingredients and advertising are clearly indicated in the Complaint and are not a matter of factual dispute. This heightens the federal interest in this dispute, because there is a likelihood that the outcome of this case would control or influence litigation involving a variety of other similar pet products that contain comparable hemp-based ingredients. In fact, Plaintiff's counsel has contemporaneously filed a nearly-identical action against PetSmart raising these same claims about an additional pet product, which PetSmart is also contemporaneously removing to this Court.[3]

**The Claims are Preempted Under Federal Law.**

15.      There is also federal law preemption in this case,[4] as courts in this District have previously held that product claims under the FDUTPA can be preempted by FDA law and regulation. For example, in *Lombardo v. Johnson & Johnson Consumer Cos.*, No. 13-60536-Civ-SCOLA, 2013 U.S. Dist. LEXIS 189043 (S.D. Fla. 2013), the court held that Plaintiffs' challenges

---

[2] By way of example, the FDA's 2020 operating budget totals $5.9 billion. *See* https://www.fda.gov/media/136036/download.

[3] *See Newell v. PetSmart, Inc.*, Case No. CACE-20-007163 (Broward Cty. Cir. Ct., filed April 28, 2020), for which PetSmart is contemporaneously filing a Notice of Removal to this Court today.

[4] PetSmart anticipates that FDA federal preemption will apply to this case, though not based on the precise provisions of FDA law that Plaintiff relies on. PetSmart disputes that the FDA-related statutes identified in Plaintiff's Complaint are the correct federal statutes applicable to the Product, but will raise other arguments based on preemption by FDA law and regulation in its forthcoming Motion to Dismiss. Under either analysis, FDA preemption will apply.

to the labeling of sunscreen products was preempted as of the time that an on-point FDA rulemaking guidance went into effect. *See also Bailey v. Janssen Pharmaceutica, Inc.*, No. 06-80702-Civ-RYSKAMP/VITUNAC, 2007 U.S. Dist. LEXIS 112568, at *17-18 (S.D. Fla. Apr. 11, 2007) ("The FDA has primary authority and expertise to regulate prescription drugs and services. As such, the FDA guidelines preempt state consumer fraud claims that constitute a 'requirement or prohibition imposed under state law with respect to advertising or promotion' . . . . FDA approved labeling for the patch cannot serve as a basis for the state law claim because such claim is preempted by FDA regulation.") (also explaining that "Plaintiff is correct in noting that neither of these cases expressly holds that federal law preempts the Florida statute, yet these cases do provide that state law claims that conflict with federal regulations are preempted. The FDA's determinations about the propriety of marketing materials regarding the patch deserve deference.").

16.     Accordingly, this action involves disputed and substantial federal issues, including federal preemption, notwithstanding Plaintiff's attempts at "artful pleading" to restrict their causes of action to state law. It is abundantly clear from the face of the Complaint that Plaintiff's claims are entirely, and exclusively, premised on the construction and application of the Federal Food Drug & Cosmetics Act. The core and the crux of Plaintiff's Complaint is that the challenged product cannot be lawfully sold because it is an unauthorized animal drug that violates the FD&C Act. The resolution of this case thus depends, entirely and inherently, on construction of federal law. Therefore, Plaintiff's complaint raises a federal question and this Court has subject-matter jurisdiction.

## DIVERSITY JURISDICTION OF THIS COURT

17.    This Court also has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the parties are completely diverse, and were completely diverse at the time Plaintiff filed the complaint.

**A.     There is Complete Diversity Between the Parties**

18.    Defendant PetSmart is, and at all relevant times has been, a Delaware corporation with its principal place of business in Phoenix, Arizona.[5] It is therefore deemed to be a citizen of Delaware and Arizona under 28 U.S.C. § 1332(c)(1).

19.    Plaintiff and putative class representative Astorria Sassano is, and at the time of the filing of the Complaint was, a resident of Broward County, Florida. Compl., Ex. B ¶ 2.

**B.     The Amount in Controversy Exceeds $75,000, Exclusive of Interest and Costs**

20.    The amount-in-controversy requirement found in 28 U.S.C. § 1332 is satisfied. On the face of the Complaint, while Plaintiff only specifies that she seeks damages "in excess of" $30,000 (Compl., Ex. B ¶ 1), she also seeks to recover attorney's fees, as provided for under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA). Compl., Ex. B ¶¶ 1, 74, 76, 77; Fla. Stat. §§ 501.211 & 501.2105. It is well-established that if attorneys' fees are provided for by statute, then a claim for attorneys' fees counts toward the amount in controversy. *See, e.g., Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1265 (11th Cir. 2000) ("When a statute authorizes the recovery of attorney's fees, a reasonable amount of those fees is included in the amount in

---

[5] In the Complaint, Plaintiff alleges that "Defendant is a foreign for-profit corporation, doing business in Broward County, Florida." Compl., Ex. B ¶ 3.

controversy."); *Federated Mut. Ins. Co. v. McKinnon Motors, LLC,* 329 F.3d 805, 808 n. 4 (11th Cir. 2003).

21.     The amount in controversy must include a reasonable estimation of attorneys' fees to be incurred and sought if the plaintiff ultimately prevails. *See, e.g.*, *Hall v. Am. Sec. Ins. Co.*, No. 09-21697-Civ-MORENO, 2009 U.S. Dist. LEXIS 130488, at *3-4 (S.D. Fla. July 23, 2009) (Moreno, J.) ("Plaintiff argues the Court must look to the amount of fees incurred up until the time of removal to determine whether the jurisdictional amount is met. . . . The court does not agree that this is the correct way to calculate a 'reasonable' amount of fees."); *Brown v. Cunningham Lindsey U.S., Inc.*, 3:05-cv-141-J-32HTS, 2005 U.S. Dist. LEXIS 38862, at *14 (M.D. Fla. May 11, 2005) (considering what would be "a fair estimate of Ms. Brown's attorneys' fees through trial"); *see also McGlynn v. Huston*, 693 F. Supp. 2d 585, 596 (M.D. La. 2010) (considering "fees likely to be incurred in this matter").

22.     "The Eleventh Circuit Court of Appeals has held that it is appropriate for a federal court to look beyond the face of a complaint in assessing its jurisdiction when a notice of removal is filed." *Lewis v. AT&T Corp.,* 898 F. Supp. 907, 909 (S.D. Fla. 1995) (citing *Davis v. Cluet, Peabody & Co.,* 667 F.2d 1371, 1373 (11th Cir. 1982) (also stating that "a Court may properly look to a Notice of Removal to "suppl[y] the missing requisite [jurisdictional] facts."). Indeed, the Eleventh Circuit has chastised plaintiffs who attempt to obfuscate and deliberately avoid federal jurisdiction in their complaints.

23.     This applies to the determination of the amount in controversy. As the Eleventh Circuit explained in *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1064 (11th Cir. 2010), "when a district court can determine, relying on its judicial experience and common sense, that a claim satisfies the amount-in-controversy requirements, it need not give credence to a plaintiff's

representation that the value of the claim is indeterminate. Otherwise, a defendant could wrongly be denied the removal to which it is entitled." *Id.* The court explained that "preventing a district judge from acknowledging the value of the claim, merely because it is unspecified by the plaintiff, would force the court to abdicate its statutory right to hear the case…. Plaintiffs skilled in this form of artful pleading could, with this 'trick,' simply 'make federal jurisdiction disappear.'" *Id.* The court reasoned that "[b]oth policy and precedent counsel against rewarding such obfuscating tactics." *Id.*

24.     Here, litigation will be costly. Plaintiffs' claims require analysis, research, and litigation of complicated federal statutory and regulatory requirements, as shown on the face of the Complaint, which cites at least six separate provisions of the Federal FD&C Act and various subsections thereof, in addition to FDA enforcement by way of warning letters. *See* Compl., Ex. B ¶¶ 15-22.

25.     This will involve the litigation of federal preemption, which will require review of precedent from outside of the immediate jurisdiction. In addition, the parties will have to litigate the availability and propriety of the various forms of injunctive relief Plaintiff seeks. As a result of the complexity of Plaintiff's claims, attorneys' fees for litigating this action are likely ultimately to be quite high if Plaintiff ultimately prevails on her claims.

26.     The previous conduct of Plaintiff's counsel in other putative class actions makes it highly likely that, even in the absence of class certification, Plaintiff's counsel will demand attorneys' fees on behalf of the single named Plaintiff that far exceed $75,000. In a previous putative class action also related to product claims brought under the FDUTPA, the same counsel representing Plaintiff in this action, Howard W. Rubenstein, made a settlement proposal that sought attorneys' fees in excess of $75,000. Counsel made this request early in the litigation of the

matter, before briefing or argument regarding class certification. As a result, the case was removed to this court on the basis of diversity jurisdiction. *See Perez v. Ralph Lauren Corp.* Case No. 9:18-cv-81631 (S.D. Fla), Dkt. No. 1 and Exhibit B thereto (Declaration of Jason Stiehl indicating that Mr. Rubenstein's settlement proposal "demanded in excess of $75,000 in damages and attorney's fees" to resolve that action). It is therefore highly likely that in this similar case, Plaintiff's counsel will likewise seek attorneys' fees in excess of $75,000, even on behalf of the single named plaintiff.

WHEREFORE, Defendant PetSmart respectfully requests, pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446, that this action be removed in its entirety from the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, to this Court, that this Court proceed with the case as if it was originally initiated in this Court, and that this Court make and enter such further orders as may be necessary and proper.

Dated: May 29, 2020

Respectfully submitted,

*s/ Alec H. Schultz*
Alec H. Schultz
Florida Bar No. 35022
León Cosgrove, LLP
255 Alhambra Circle, Suite 800
Coral Gables, Florida 33134
Telephone:  305-740-1975
Facsimile:  305-437-8158
Email:  aschultz@leoncosgrove.com

Jason P. Stiehl
Nina Ruvinsky
*pro hac vice to be filed*
Loeb & Loeb LLP
321 N. Clark Street, Suite 2300
Chicago, Illinois 60654
Telephone:  312-464-3100
Facsimile:  312-464-3111
Email:  jstiehl@loeb.com
Email:  nruvinsky@loeb.com

*Counsel for Defendant PetSmart, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on May 29, 2020, I electronically filed the foregoing with the Clerk of Court using CM/ECF system which in turn will serve a copy by electronic mail to all counsel of record.

*s/ Alec H. Schultz*
Alec H. Schultz
